IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARQUETTE BENSON, also known as Marquette Mukes, | ) ) ) |
| Petitioner, | ) ) |
| v. | No. 2:19-cv-02236-TLP-tmp ) ) |
| STATE OF TENN., SHELBY COUNTY CRIMINAL COURT DIV. 8, LEON JOSE, Attorney General, TRENT HALL, Defense Attorney, and RUSTY WASHBURN, Warden, | ) ) ) ) ) ) |
| Respondents. | ) |

**ORDER DENYING PENDING MOTIONS AS MOOT, DISMISSING PETITION, DENYING CERTIFICATE OF APPEALABILITY, CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Marquette Benson a/k/a Marquette Mukes petitioned pro se under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody.[1] (ECF No. 1.) Petitioner amended his petition ("§ 2254 Petition") and Respondent answered. (ECF Nos. 13 & 30.)

For the reasons discussed below, the Court finds that the procedural default doctrine bars Petitioner's claims. As a result, the Court **DISMISSES** this § 2254 Petition and **DENIES** Petitioner's pending motions as **MOOT**.

---

[1] The State of Tennessee has custody of Petitioner and is housing him at the South-Central Correctional Facility ("SCCF") in Clifton, Tennessee. His Tennessee Department of Correction number is 288175.

## BACKGROUND

**I.     Procedural History**

In March 2017, a Shelby County Criminal Court jury convicted Petitioner of two counts of being a felon in possession of a firearm.  (ECF No. 29-1 at PageID 364.)  The trial court merged the convictions and sentenced Petitioner to ten years in prison as a Range II multiple offender.  (*Id.* at PageID 368–69.)  Petitioner appealed (*id.* at PageID 396), and the Tennessee Court of Criminal Appeals ("TCCA") affirmed.  *State v. Benson*, No. W2017-01276-CCA-R3-CD, 2018 WL 4562928 (Tenn. Crim. App. Sept. 21, 2018), *perm. app. denied* (Tenn. Feb. 25, 2018).  Although the Tennessee Post-Conviction Procedure Act allows prisoners to petition for post-conviction relief in the state court, Petitioner did not seek that relief.  *See* Tenn. Code Ann. §§ 40-30-101 et seq.

Then in April 2019, Petitioner petitioned for habeas relief in this Court under 28 U.S.C. § 2254.  (ECF No. 1 at PageID 1–3.)  The Court ordered Petitioner to amend his petition and file it on the correct form.  (ECF No. 10.)  As a result, Petitioner amended his petition (ECF No. 13), and in February 2020, Respondent filed the state court record and an answer.  (ECF Nos. 29 & 30.)

In his § 2254 Petition, Petitioner claims that (1) his attorney never investigated the indictment, and (2) he did not have a speedy or public trial.[2]  (ECF No. 13 at PageID 54.)  The TCCA has not reviewed either issue.  And as the Court will explain in more detail later, both issues are barred by the procedural default doctrine.

---

[2] As "Ground One" of his petition, Petitioner states, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.  My attorney never investigated the indictment."  (ECF No. 13 at PageID 54.)  And for "Ground Two," Petitioner writes that "[i]n all criminal prosecutions, the accused shall enjoy the right to a public trial."  (*Id.* at PageID 55.)

## II.     The Evidence

On direct appeal, the TCCA summarized the evidence presented at Petitioner's trial and post-trial proceedings:

> This case arises out of the Defendant's March 8, 2014 arrest at his mother's Memphis home for being a convicted felon in possession of a firearm. According to the State's proof at trial, a 911 "armed party" call was made from the home that night. When officers responded, they found two individuals present in the home: the Defendant's frail mother and the intoxicated, belligerent Defendant. After receiving the Defendant's mother's consent to search the home, the officers found an automatic handgun underneath the mattress in the Defendant's bedroom and a spent .40 caliber shell outside the home. The Defendant was arrested and subsequently indicted on two counts of convicted felon in possession of a firearm.
>
> At the Defendant's March 22-24, 2017 trial, the State presented as witnesses the Memphis police officers who responded to the "armed party" call, who related that the intoxicated Defendant bragged about his $200 pair of blue jeans that were hanging in the closet of the bedroom that his mother pointed out as his; the police lieutenant who learned of the Defendant's status as a convicted felon by running his information through the computer system; and a 911 supervisor and keeper of the records, who identified a redacted version of the written record, or "chronology," of the 911 call, which was admitted as an exhibit. The State also introduced as exhibits the death certificate of the Defendant's mother and a stipulation of the parties that the Defendant had prior convictions for aggravated assault and burglary of a building.
>
> The Defendant, testifying on his own behalf, claimed that he lived elsewhere and was only visiting his ill mother at her home, where she lived with her boyfriend/caretaker, the boyfriend's brother, and the Defendant's younger brother. He said his mother's boyfriend and the boyfriend's brother were present with him and his mother in the home when the police responded. He testified he answered the door to the police and was immediately handcuffed and placed in a patrol car. He stated that the bedroom in which the weapon was found was his brother's and speculated that the gun must have belonged to his brother. He denied having ever seen the gun or that he fired or handled a weapon that night. On cross-examination, he acknowledged that he pled guilty to aggravated assault because he beat his mother with a baseball bat, although he claimed that it "was more [his] girlfriend, just a lot of . . . a lot of things going on."
>
> Following deliberations, the jury convicted the Defendant of both counts of the indictment. The trial court subsequently merged the convictions and sentenced the Defendant as a Range II multiple offender to ten years in the Department of Correction.

At the beginning of the sentencing hearing, the Defendant expressed his desire to represent himself and attempted to give the trial court a paper entitled "Notification of Arrest of Judgment: Challenging Statues [sic]." After a lengthy voir dire, the trial court found that the Defendant "d[id] not know what he[ ] [was] doing" but that he "ha[d] a right to represent himself." The court then denied the Defendant's motion, explaining to the Defendant that he was convicted of violating a state, rather than a federal, statute, and that the court had jurisdiction over the Defendant.

Because the "Notification of Arrest of Judgment" is representative of the style and logic that the Defendant uses in his brief and the numerous motions filed in this court, we have set forth a pertinent portion of it below:

> Rule 5.1. Constitutional Challenge to a Statue [sic] – Notice, certification and intervention.
>
> I Mr. Benson challenges [sic] your magistrate delegation of authority to constitute in writ documentation that this, State Government has the authority to abridge, modify enlarge or adopted [sic] federal cases and statue's [sic] from Article III Federal Courts. 28 U.S.C. § 2072.
>
> The Constitution of the United States, Article II of amendments, declaring the right of the citizen to bear arms, is a restriction alone upon the United States, and has no application to State Government.
> . . .
>
> Indictment and Information;
>
> Conviction of "unlawfully carrying a pistol" can-not be sustained, under ordinance carrying into municipal law state law prohibiting carrying of any except army or navy pistol openly in hand.

At the June 2, 2017 motion for new trial hearing, the trial court again attempted to dissuade the Defendant from representing himself, to no avail. The Defendant handed over a new motion that he requested that the trial court file, which he styled as "Motion for Default in Judgment and Reversal of Conviction," and which the trial court treated as his motion for new trial. During the hearing, the Defendant expressed his belief that the arresting officers should not have been allowed to testify at his trial because they did not provide any prior statements "to verify whether their testimony was trustworthy[.]" He also argued that the "911 call" "shouldn't have been tampered with" because it was evidence. Following the trial court's oral denial of his motion for new trial, the Defendant opted to represent himself on appeal, despite further warnings from the trial court of the danger in doing so. On June 9, 2017, the trial court entered a written order that, among other things, overruled the Defendant's motion for new trial and allowed him to represent

himself on appeal. On June 20, 2017, the Defendant filed a timely notice of appeal to this court.

*State v. Benson*, 2018 WL 4562928, at *1–2.

Now the Court turns to the relevant legal standards here.

## **LEGAL STANDARDS**

Federal courts may issue habeas corpus relief for persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). But a federal court has limited authority and may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### I.     Exhaustion

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254(b) and (c), a petitioner must present the same claim for which it seeks redress in a federal habeas court to the state courts. *Id.* The petitioner must "fairly present"[3] each claim to all levels of state court review, including the state's highest court on discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). That said, a petitioner need not present to all levels of the state court if the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).

---

[3] To exhaust each claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Tennessee has done that. Indeed, Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003). Under Rule 39, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies.'" *Id.* (quoting Tenn. Sup. Ct. R. 39); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

## II.     Procedural Default Doctrine

There is also a procedural default doctrine much like the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground (such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim), the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citation omitted).[4] In general, a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

---

[4] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Walker*, 562 U.S. at 315. A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (quoting *Kindler*, 558 U.S. at 60–61) (internal quotation marks and citations omitted).

If the procedural default doctrine bars a claim at the state level, the petitioner must show cause to excuse his failure to present the claim. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). And he must show (1) actual prejudice stemming from the constitutional violation, or (2) that a failure to review the claim will lead to a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 320–21. For the latter, the petitioner must establish that a constitutional error has probably led to the conviction of a person who is innocent of the crime. *Id.* at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

## II. Merits Review

Under Section 2254(d), where a state court decided a claim on the merits, a court should only grant a habeas petition if resolving the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under § 2254(d)(1), the court has to limit its review to the record that the state court used to adjudicate the claim on the merits. *Cullen*, 563 U.S. at 181. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13

(2000). A state court makes an "unreasonable application" of federal law when it "identifies the correct governing legal principle from" the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* So the state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. And the habeas court may not issue the writ just because, "in its independent judgment," it determines that the "state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411) (internal quotation marks omitted).

There is little case law addressing whether, under § 2254(d)(2), a state court based a decision on "an unreasonable determination of the facts." In *Wood v. Allen*, the Supreme Court noted that a state-court factual determination is not "unreasonable" only because the federal habeas court would have reached a different conclusion.[5] 558 U.S. 290, 301 (2010). In *Rice v. Collins*, the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination." 546 U.S. 333, 341–42 (2006).

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable," and has emphasized that, under § 2254(e)(1), the federal court presumes that the state court's factual determination is correct absent clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010). A federal court will not overturn a state

---

[5] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood*, 558 U.S. at 299. The Court found it unnecessary to reach that issue, and left it open "for another day." *Id.* at 300–01, 304 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006) (recognizing that it is unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply)).

court adjudication on factual grounds unless objectively unreasonable given the evidence presented during the state court proceeding. *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

### III. Ineffective Assistance

#### A. Rights to Effective Assistance of Counsel

The standards from *Strickland v. Washington* control a claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel. 466 U.S. 668, 687 (1984). To succeed on this claim, a movant must prove two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Plus the Sixth Circuit noted recently that this standard is "even more difficult to meet in habeas cases, where the review that applies to *Strickland* claims is 'doubly deferential.'" *Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal quotation marks and citation omitted).

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A court considering a claim of ineffective assistance applies a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To show prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[6] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (stating "*Strickland* does not require the State to rule out" a more favorable outcome to prevail, but " places the burden on the defendant, not the State, to show a reasonable probability that the result would have been different." (internal quotation marks omitted)).

A federal court's deference to a state-court decision under 28 U.S.C. § 2254(d) increases when reviewing an ineffective assistance claim. According to the Supreme Court in *Harrington*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. at 105 (internal citations and quotation marks omitted).

---

[6] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

10

### B. Right to Effective Assistance of Counsel on Appeal

A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). But counsel's failure to raise a nonfrivolous issue on appeal does not constitute per se ineffective assistance. The Supreme Court has held the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). So courts evaluate claims of ineffective assistance of appellate counsel using the *Strickland* standards. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Murray*, 477 U.S. at 535–36 (applying *Strickland* to appellate counsel's failure to raise issue on appeal). This means that, to prove that appellate counsel was ineffective, a prisoner

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Robbins*, 528 U.S. at 285 (citation omitted).[7]

---

[7] The Sixth Circuit has identified a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:
  1. Were the omitted issues "significant and obvious?"
  2. Was there arguably contrary authority on the omitted issues?
  3. Were the omitted issues clearly stronger than those presented?
  4. Were the omitted issues objected to at trial?
  5. Were the trial court's rulings subject to deference on appeal?
  6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
  7. What was the appellate counsel's level of experience and expertise?
  8. Did the petitioner and appellate counsel meet and go over possible issues?
  9. Is there evidence that counsel reviewed all the facts?

For these reasons, it is hard to show that appellate counsel was deficient for raising one issue on appeal, rather than another. "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011), *rev'd on other grounds*, 567 U.S. 37 (2012). And the petitioner must also show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

When the direct appeals ends, so does the right to counsel. In *Coleman v. Thompson*, the Supreme Court found that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." 501 U.S. at 752 (internal citations omitted). As a result, "a petitioner cannot claim constitutionally ineffective assistance of counsel" in post-conviction proceedings. *Id.* What is more, attorney error cannot constitute "cause" for a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks omitted). So when the state has no constitutional obligation to ensure that a prisoner has competent counsel, the petitioner bears the risk of attorney error. *Id.* at 754.

There is, however, a narrow exception to the rule in *Coleman*. In *Martinez v. Ryan*, the Supreme Court considered an Arizona law that did not permit petitioners to raise ineffective assistance claims on direct appeal. 566 U.S. 1, 6 (2012). The Court held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a

---

10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) (citation omitted).

substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 17. The Supreme Court also emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here," and "[i]t does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." *Id.* at 16.

> To excuse a procedural default under *Martinez*, a petitioner must show that
>
> (1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law *requires* that an ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (internal quotations and citations omitted). And, in its later decision in *Trevino*, the Supreme Court extended its *Martinez* holding to states which have a "procedural framework, by reason of its design and operation, [that] makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." 569 U.S. at 429. Thus, *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default. What is more, the Sixth Circuit has found that both *Martinez* and *Trevino* apply to Tennessee prisoners. *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

With this background in mind, the Court now considers Petitioner's § 2254 claims.

## ANALYSIS OF PETITIONER'S CLAIMS

The procedural default doctrine bars both of Plaintiff's claims for relief here. Petitioner states these two grounds for relief:

13

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. My attorney never investigated the indictment."

2. "In all criminal prosecutions, the accused shall enjoy the right to a public trial."

(ECF No. 13 at PageID 54–55.)  He adds that his trial did not occur until three years after he committed the alleged crimes.  (*Id.* at PageID 54.)  What is more, Petitioner claims that his trial was not public—"no one was there" but the jury.  (*Id.* at PageID 55.)  And finally, he argues that his "attorney fail[ed] to make a standing on [his] motion for defective indictment."  (*Id.* at PageID 54.)

These issues are different from the issues that Petitioner raised on direct appeal.  On direct appeal, Petitioner argued that the State engaged in prosecutorial misconduct by (1) redacting a chronology of a 911 call, (2) improperly commenting on the evidence, and (3) presenting false testimony.  *State v. Benson*, 2018 WL 4562928, at *1.  Petitioner also claimed that, because the trial court stopped him from admitting a police report into evidence, it prevented him from fully presenting his defense.  *Id.*  Finally, based on some evidentiary rulings, Petitioner argued that the trial court showed bias in favor of the prosecution.  *Id.*; (*see also* ECF No. 29-8 at PageID 777–81).

With this in mind, this Court finds that Petitioner did not present the issues raised in this federal habeas petition on direct appeal or in a post-conviction petition.  The issues he raised before the TCCA differed from the two issues he raises here.  Besides, Petitioner filed no post-conviction petition at all.  So he never asserted a claim of ineffective assistance of counsel to the Tennessee courts.  And now, Petitioner can no longer bring these claims in state court, because the state statute of limitations has run.  Tenn Code Ann. § 40-30-102(a).

All in all, Petitioner did not "fairly present" his claims to the state court. *Baldwin*, 541 U.S. at 29. And because Petitioner did not raise these claims on direct appeal or during post-conviction proceedings, he has not properly exhausted the claims. As a result, this procedural default acts as a complete and independent procedural bar to federal habeas review of these claims. The Court therefore **DISMISSES** the § 2254 Petition **WITH PREJUDICE**. The Court will enter judgment for Respondent.

## APPELLATE ISSUES

A petitioner is not always allowed to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). In fact, the court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. *See* Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

The Court may issue a COA only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must reflect the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)-(3). A petitioner makes a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must show that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed more).

But the petitioner does not have to show that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same). Even still courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Here the procedural default doctrine bars Petitioner's claims. Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court **DENIES** a certificate of appealability.

For the same reasons the Court denies a certificate of appealability, the Court finds that any appeal would not be taken in good faith. Thus, the Court **CERTIFIES** under Federal Rule of Appellate Procedure 24(a) that any appeal here would not be taken in good faith, and also **DENIES** leave to appeal in forma pauperis.[8]

**SO ORDERED**, this 31st day of August, 2021.

                                                 s/Thomas L. Parker
                                                 THOMAS L. PARKER
                                                 UNITED STATES DISTRICT JUDGE

---

[8] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed in forma pauperis and file a supporting affidavit in the Sixth Circuit within thirty days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).